**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ELIZABETH SHORT        :
                      :
       Plaintiff,       :     CASE NO.  1:21-cv-1121-CFC
                      :
    v.                :     TRIAL BY JURY DEMANDED
                      :
STATE OF DELAWARE DIVISION :
OF HEALTH AND SOCIAL    :
SERVICES              :
                      :
       Defendant.     :

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

 */s/ Luciana M. Parker*
Luciana M. Parker (#5177)
Deputy Attorney General
Carvel State Office Building
820 North French Street, 6th Fl.
Wilmington, DE 19801
(302) 577-8400
Luciana.Parker@delaware.gov
*Attorney for Defendant*

Dated: March 10, 2023

# **TABLE OF CONTENTS**

TABLE OF CITATIONS ........................................................................ iii

NATURE AND STAGE OF THE PROCEEDINGS ................................. 1

SUMMARY OF ARGUMENT ............................................................. 1

STATEMENT OF FACTS ................................................................... 3

ARGUMENT .................................................................................... 8

Summary Judgment Standard ........................................................ 8

The *McDonnell Douglas* Burden-Shifting Framework ......................... 9

    I.     Eleventh Amendment Immunity Bars Short's ADA Claims ................. 10

    II.    Eleventh Amendment Immunity Bars Short's FMLA Claims ............... 12

    III.    Short Has Not Established that DHSS Discriminated Against Her Based on Short's Disability ...................................................... 13

    IV.    Short Has Not Established that DHSS Retaliated Against Short in Violation of the ADA .............................................................. 16

    V.    Short's FMLA Retaliation and Discrimination Claims Fail ................... 18

    VI.    Short's Worker's Compensation Retaliation Claim Should be Dismissed for Lack of Jurisdiction and Short Fails to Prove Retaliation .............................................................................. 20

    VII.    Conclusion ............................................................................. 22

## **TABLE OF CITATIONS**

*Alfred v. Harris County Hospital District*, 666 F. App'x 349 (2016) .....................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................... 8-9

*Benn v. First Judicial Dist. Of Pa.,* 426 F.3d 233 (3d Cir. 2005) ..........................11

*Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) .................10, 11

*Brooks v. Delaware*, 2012 WL 1134481 (D. Del. Mar. 30, 2012) ..........................11

*Capps v. Mondelez Global, LCC,* 147 F. Supp.3d 327, 337 (E.D. Pa. 2015) ...19, 20

*Capps v. Mondelez Global, LCC,* 847 F.3d 144, 151 (3d Cir. 2017) ......................18

*Carlsbad Technology, Inc. v. HIF Bio, Inc.,* 129 S.Ct 1862 (2009).......................21

*Carter v. Wesley*, 2020 WL 838310 (D. Del. Feb. 20, 2020) ...............................8, 9

*Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249 (3d Cir. 2017)....................16

*Castleberry v. STI Group*, 863 F.3d 259 (3d Cir. 2017)........................................15

*Cook v. Garner*, 2020 WL 4876309 (6th Cir. June 17, 2020)................................11

*Davis v. Temple Univ. Hosp., Inc.,* 2015 WL 7180505 (E.D. Pa. Nov. 16, 2015)..18

*Edelman v. Jordan*, 415 U.S. 651 (1974) ...............................................................10

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000) ...........................19

*Flax v. DE Division of Family Services*, 2008 WL 1758857 (D. Del. April
    16, 2008).......................................................................................................10

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)......................................................10

*Gilliss v. Dentsply, LLC*, 116 F.Supp.3d 433 (D. Del. 2015)..................................21

*Gresham*, 2018 WL 6616943 (D. Del. Dec. 18, 2018)...........................................11

*Karam v. Del. Div. of Servs. for Children, Youth and Their Families*, 2010
    WL 5343182 (D. Del. Dec. 15, 2010) .....................................................11, 12

*Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236 (3d Cir.)..............................17

*Lichtenstein v. University of Pittsburgh Medical Center*, 691 F.3d 294 (3d
    Cir. 2012)..............................................................................................18

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)........9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .....................9, 10, 16, 18

*Moore v. City of Phila.*, 461 F.3d 331 (3d Cir. 2006) ...........................................16

*Santora v. Red Clay Consol. School Dist.*, 901 F. Supp. 2d 482 (D. Del.
    2012), *aff'd*, 580 F. App'x 59 (3d Cir. 2014)..................................................21

*Shah v. Bank of Am.*, 346 F. App'x 831 (3d Cir.)..................................................16

*Smith v. Delaware*, 745 F. Supp. 2d 467 (D. Del. 2010)........................................10

*Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798 (D. Del. Mar. 31, 2009)........9

*Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521 (D.
    Del. July 28, 2020)..........................................................................................13

*Williams v. Phil. Housing Authority Police Dep't*, 380 F.3d 751 (3d Cir. 2004) ...16

## STATUTUES NAD OTHER AUTHORITIES

U.S. CONST. AMEND. XI ...............................................................................*passim*

U.S. CONST. AMEND. XIV.....................................................................................9

19 *Del. C.* §710 (6)..................................................................................................16

19 Del. C. § 2365 ....................................................................................................21

Fed. R. Civ. P. 56(a)..................................................................................................8

## NATURE AND STAGE OF THE PROCEEDINGS

Elizabeth Short ("Short"), a former employee of Delaware Department of Health and Social Services ("DHSS") with the Division of Social Services ("DSS") for the State of Delaware, initiated this action (the "Complaint" or "Compl."). D.I. 1. Short asserts five claims: Count I: Americans with Disabilities Act ("ADA") Discrimination;[1] Count II: ADA Retaliation; Count III: Family and Medical Leave Act ("FMLA") Discrimination[2]; Count IV: FMLA Retaliation; and Count V: Worker's Compensation Retaliation. DHSS filed an answer to the Complaint on November 18, 2021. D.I. 5. The parties completed all discovery on January 30, 2023.

This is DHSS' Opening Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

1. DHSS is entitled to sovereign immunity under the Eleventh Amendment for Short's ADA discrimination and retaliation claims.

---

[1] Although Short styles her first Count as DHSS' failure to accommodate in violation of the ADA, the allegations in the Count itself make clear that Short's first Count alleges only disability discrimination. *See* D.I. 1 ¶¶30-32. Moreover, Short's Complaint is devoid of any allegations that DHSS did not appropriately accommodate Short's disability.

[2] Short does not and has not asserted an FMLA interference claim.

2.     DHSS is entitled to sovereign immunity under the Eleventh Amendment for Short's FMLA discrimination and retaliation claims.

3.     Short fails to establish a *prima facie* case of ADA discrimination as she cannot demonstrate the causal connection between her disability and the adverse employment action taken against her.  Moreover, DHSS has demonstrated that it took adverse employment action against Short for legitimate, non-discriminatory reasons, including Short's continued failure to follow DHSS policy, wrongful changing of her work schedule, and unauthorized, multiple all building-employee emails which caused unnecessary panic and workplace disruption.

4.     Short fails to establish a *prima facie* case of ADA retaliation because she failed to engage in any protected conduct and, as outlined above, DHSS had legitimate, non-discriminatory reasons for taking adverse employment actions against Short.

5.     Short fails to establish a prima facie case of FMLA discrimination and retaliation because she failed to provide any evidence that by exercising her right to take FMLA she was discriminated against by DHSS.  Additionally, DHSS had a legitimate, non-discriminatory reason to terminate Short's employment.

6.     The Court should not exercise supplemental jurisdiction over Short's state-law Worker's Compensation retaliation claim. To the extent the Court does exercise jurisdiction over Short's Worker's Compensation retaliation claim, Short

2

fails to establish a causal connection between Short's application for Worker's Compensation benefits and her termination. Moreover, DHSS has proffered a legitimate, non-discriminatory reason for terminating Short's employment and Short cannot prove the legitimate, non-discriminatory reason is pretext for retaliation.

## STATEMENT OF FACTS

DHSS is a state agency for the State of Delaware. D.I. 1. Short was employed by DHSS in 2016 as a casual/seasonal office manager. DA003 at 7 ¶¶5-17. Short's job duties consisted of various other tasks at the direction of her then supervisor, John Bryant. DA003 at 7-8 ¶¶18-18. She had special access to the eStar system in her auditor role and capability to change employees' work schedules. DA013 at 44-45 ¶¶3-3; DA055 at 43 ¶¶4-20. The eStar system is one of the State of Delaware's accounting, time keeping and billing systems. DA038 at 61 ¶¶12-20.

When Short was hired, she had a service animal. DA006 at 19-20 ¶¶22-4. As an accommodation, Short was allowed to bring necessities for her service animals such as, a feeding/water bowl, a bed and the ability to take her service animal out to relieve itself, as needed. DA006 at 20 ¶¶5-24.

From 2016-2017, Short complained once about her accommodations. DA058. She complained that being moved to the Williams State Service Center, where there was no carpet, caused problems for her and her service animal. DA058. Short's concern was addressed and she was allowed to remain at her current location, but

3

moved to a different seat, because the prior seat was needed. DA014-15 at 52-54 ¶¶19-17.

On October 22, 2018, Short sustained a work-related injury when she fell and injured her back and left shoulder. DA061-66; DA005 at 14-17 ¶¶21-24.  Short was approved for Worker's Compensation benefits and received medical treatment, including surgery and time off, as needed, to take care of her needs under her claim. DA005-06 at 16-17 ¶¶4-3; DA020 at 75-76 ¶¶17-12.  Short's Worker's Compensation claim was fully commuted or resolved. DA006 at 17 ¶¶4-24.

In 2019, Short complained about two matters involving her employment with DHSS.  One was when she contacted the ADA coordinator to complain that her new supervisor, Stephanie Fitzgerald ("Fitzgerald"), was allowing pets/emotional support animals in the workspace that were not allowed. DA017 at 61-62 ¶¶5-18; DA058.  Fitzgerald was educated that only service animals were allowed in the facility. DA058.  Short had told a client that they could not be in the office with their emotional support dog. DA059-60. As a resolution, Fitzgerald was told to order signs for client areas.  DA058; DA017 at 62 ¶¶5-7.

Next, Kimberly Boulden ("Boulden"), on behalf of Short, requested a list of Short's accommodations because Short advised her that her accommodations were not being honored. DA058.  To follow up, the ADA Coordinator called Short, but Short was on leave of absence. DA058.

4

On May 13, 2019, Short was hired as a full-time, merit employee, identified as an Administrative Specialist I. DA004 10 ¶¶1-16. Her job duties remained mostly the same under Denise Greenfield. DA004 at 11 ¶¶2-6; DA046 at 7-8 ¶¶20-18. Her special access to eStar, the State of Delaware's billing system under her auditor function, remained until May 14, 2019. DA039 at 63 ¶¶18-22; D067-69. Also, on May 13, 2019, Short's own work schedule was changed in eStar by USER ID#H071ESS, which was assigned to Short. DA070-78.

Short denied changing her schedule and blamed the change on another employee. DA013 at 48 ¶¶3-22. However, an audit report of the eStar system confirmed that it was Short that changed her own schedule.  DA014 at 49 ¶¶4-16. Short knew it was against company policy to go in eStar and change her own time. DA011 at 40 ¶¶16-21.  Boulden met with Short to discuss the eStar situation, the company policy against such actions and to advise her of the proposed 10-day suspension without pay disciplinary plan. DA110-11.

On June 6, 2019, Short wrote to Boulden expressing that the suspension posed a financial hardship on her. DA079; The proposed disciplinary plan was created following review by management and Labor Relations' recommendation. DA111. Short filed a grievance on June 28, 2019. DA80-81.  Her grievance was heard and Short accepted the proposed disciplinary plan.  DA082.  However, due to Short's financial concerns, Boulden presented the information to management and

advocated for a 10-day suspension with pay, instead. DA084-85; DA111. DHSS agreed to a 10-day administrative suspension with no time lost. DA084-85. Short was not terminated at this time.

On August 7, 2019, Boulden was alerted by a phone call of a situation in the Blue Hen's parking lot. DA111. A gentleman with a firearm was seen. DA049 at ¶¶22-10; DA047-49 at 12-20 ¶¶22-3. He was not pointing the gun or threatening to harm, but the situation required investigation to ensure there was no threat. DA111; DA049 at 20 ¶¶4-10.

Boulden and other managers tried to ascertain the facts and assess the situation. DA111;DA030 at 27 ¶¶12-22.  There was little information available, but out of caution one of the doors of the building was locked. DA030 at 28 ¶¶12-14; DA111.

Without any direction, Short sent an email advising building staff that, "the Blue Hen is currently on lockdown until further notice! No one is to leave the building." DA086. No formal word had been given to lock the building down. DA049 at 21 ¶¶14-21.  Boulden told Short that she should not have sent out that email without management approval, as such emails can cause unnecessary concern. DA112; DA089. Once it was determined that there was no danger to employees, management was able to resolve the situation.  DA030 at 28 ¶¶5-8. Short, however, sent out another unauthorized email to the building staff advising, "We are all clear.

6

The lockdown has been lifted". DA087.  The emails "were inflammatory and created

an atmosphere that was problematic…." DA032 at 34 ¶¶9-19.

Again, Boulden had to meet with Short to discuss the seriousness of her

actions, unnecessary panic caused and security risks to others. DA112 ; DA089.

Short filed for FMLA on August 7, 2019 to begin on September 3, 2019

continuous until November 3, 2019 for her own serious health condition. DA090.

She was determined to be eligible and approved on August 16, 2019. DA090-93. As

an employee of DHSS, Short had been approved for FMLA previously. DA094.

Management met to discuss Short's actions on August 7, 2019 and decided to

terminate Short's employment. DA113. On August 30, 2019, DHSS' request for

termination was sent to Secretary Walker, for signature. DA095. The discussion and

decision to terminate Short occurred days before her termination date. DA034-35 at

45-46 ¶¶23-10. Short's termination letter detailed the actions[3] of Short that led to her

termination, specifically for violation of the Department of Technology and

Information's Acceptable Use Policy, and the DSS Operations Memorandum OM-

7-2016, inappropriate communications and insubordination. DA096-97. The OM-7-

2016 policy serves a broad purpose and specifically prohibits the use of state

resources for personal or inappropriate use. DA098-101; DA026 at12 ¶¶5-16; Ex.

---

[3] Letter erroneously notes August 16, 2019 as the date that Short sent out emails to
the staff.  Actual emails sent in DA086-87, show they were sent on August 7, 2019.

DA038 at 58-59 ¶¶10-1. The policy prohibited Short from accessing her own information. DA038 at 58-59 ¶¶17-21. Short failed to adhere to DHSS' policies and to follow management directives demonstrated poor judgment and an ongoing inability to perform at an acceptable level. DA097.

Short was provided an Employee Guide at the time of her employment with DHSS. DA103-105. Short acknowledged that she would become familiar with and adhere to all applicable policies, standards, rules and regulations of DHSS which included OM-07-2016 and DSS Employee Guide. DA106. The Employee Guide, Employee Expectations section identifies that misuse of State/Federal resources includes, but not limited to using the State accounting or billing processes for personal gain. DA105.

Short filed an administrative charge of discrimination on December 31, 2019. DA107.

## ARGUMENT

### Summary Judgment Standard.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] factual dispute is genuine only where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Carter v. Wesley*, 2020 WL 838310, at *2 (D. Del. Feb. 20, 2020) (quoting *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 247-48 (1986)).   The mere existence of a factual dispute is insufficient to preclude summary judgment: there must be a dispute over a material fact that would affect the outcome of a suit under the governing law.  *Liberty Lobby*, 477 U.S. at 248.   Furthermore, the "nonmoving party must 'do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Carter*, 2020 WL 838310, at *2 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).   "The non-moving party's failure to offer colorable or significantly probative evidence for an essential element on which it has the burden of proof entitles the moving party to summary judgment." *Subh v. Wal-Mart Stores East, LP*, 2009 WL 866798, at *10 (D. Del. Mar. 31, 2009).

### The *McDonnell Douglas* Burden-Shifting Framework.

Claims for disparate treatment, failure to accommodate, retaliation under Title VII, retaliation under the FMLA, and employment discrimination under the Fourteenth Amendment are governed by the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under *McDonnell Douglas*, the analysis proceeds in three steps.  First, the plaintiff carries the burden at the summary judgment stage to produce *prima facie* evidence of the complained-of retaliation or discrimination.  *Id.* at 802.  Once the plaintiff meets her burden, the employer can still prevail on summary judgment if it articulates a legitimate, non-discriminatory reason for the alleged adverse action.  *Id.*

at 802–03.  Finally, the burden shifts back to the plaintiff to prove the employer's articulated rationale is pretextual.  *Id.* at 804; *see Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)("[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered nondiscriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action[.]").

## I.    Eleventh Amendment Immunity Bars Short's ADA Claims.

The Eleventh Amendment renders states "immune from suits brought in federal courts by [their] own citizens as well as citizens of another State." *Smith v. Delaware*, 745 F. Supp. 2d 467, 479 (D. Del. 2010) (quoting *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).  "Hence, the Eleventh Amendment limits federal judicial power to entertain lawsuits against a State and ... a suit against a state agency is proscribed." *Id.* (internal quotations and citation omitted).  Congress may abrogate the States' Eleventh Amendment immunity when it unequivocally intends to do so "and acts pursuant to a valid grant of constitutional authority." *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (internal quotation marks and alteration omitted).  Moreover, the State of Delaware has not waived its Eleventh Amendment immunity. *Flax v. DE Division of Family Services*, 2008 WL 1758857, *7 (D. Del. April 16, 2008).

The law is settled that Plaintiff may not recover against DHSS, an agency of the State of Delaware, in federal court under Title I of the ADA, which prohibits disability discrimination in employment.[4] *Garrett*, 531 U.S. at 363 (holding that suits in federal court by state employees to recover money damages by reason of the State's failure to comply with Title I of the ADA are barred by the Eleventh Amendment); *see also Benn v. First Judicial Dist. Of Pa.*, 426 F.3d 233, 239 (3d Cir. 2005); *Gresham v. DHSS*, 2018 WL 6616943, at *3 (D. Del. Dec. 18, 2018) ("[U]nder the Eleventh Amendment, the State is immune from suit for damages brought pursuant to Title 1 of the ADA.").

The law is equally settled that an ADA retaliation claim brought under Title V is barred by Eleventh Amendment immunity when "the underlying [Title I] claim is barred by sovereign immunity. Thus, a defendant is immune from suit in connection with a Title V claim if it is premised on the defendant's alleged violation of Title I" of the ADA. *Brooks v. Delaware*, 2012 WL 1134481, at *4 (D. Del. Mar. 30, 2012) (quoting and citing *Karam v. Del. Div. of Servs. for Children, Youth and Their Families*, 2010 WL 5343182, at *3-4 (D. Del. Dec. 15, 2010)); *see also Gresham*, 2018 WL 6616943, at *3 ("Here, as in *Brooks*, Plaintiff's Title V claim is

---

[4] To the extent that Short is asserting a failure to accommodate claim in Count I, which DHSS believes she has not, Eleventh Amendment immunity also bars failure to accommodate claims asserted under Title I of the ADA. *Cook v. Garner*, 2020 WL 4876309, at *3 (6th Cir. June 17, 2020) (citing *Garrett*, 531 U.S. at 374).

premised on DHSS' alleged discrimination under Title I, and thus DHSS is also immune from her Title V claim."). The Court should grant summary judgment in DHSS' favor and hold that DHSS is entitled to Eleventh Amendment sovereign immunity for Short's ADA claims.

## II.     Eleventh Amendment Immunity Bars Short's FMLA Claims.

Likewise, Short cannot recover under her claims for FMLA discrimination and retaliation against DHSS because it is immune from suit. *Alfred v. Harris County Hospital District*, 666 F. App'x 349, 352 (2016) ("Accordingly, a State enjoys sovereign immunity from suit for an FMLA claim for retaliation based on the self-care provision"); *see also Karam*, 2010 WL 5343182, at *5 (holding "the FMLA's self-care provisions do not validly abrogate state sovereign immunity"). In the instant case, there is no dispute that Short filed for FMLA on August 7, 2019 indicating the leave was for her own serious health condition – not to care for a family member. DA090. Accordingly, DHSS enjoys sovereign immunity from Short's FMLA claim for retaliation based on the self-care provision. Therefore, Short's asserted claims of discrimination and retaliation for her use of FMLA based on her own serious health conditions are barred and the Court should grant DHSS' motion for summary judgment.

### III.     Short Has Not Established that DHSS Discriminated Against Her Based on Short's Disability.

Even if Short's claims survive DHSS' Eleventh Amendment Immunity defense – which they do not – her claims of disability discrimination fail.  To state a claim for disability discrimination, Short must establish that she: (1) has a disability under the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA") or the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she suffered an adverse employment action as a result of discrimination, including her employer's refusal to make a reasonable accommodation for her disability. *Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521, at *4 (D. Del. July 28, 2020).

For purposes of this motion only, DHSS does not dispute that Short is disabled, her disability required her to have a service animal, and that she was able to perform her essential job duties as an office manager with the accommodation of her service animal.

Short cannot prove, however, that she was unlawfully terminated because of her disability, the symptoms of her disability and because she had to take leave to control the symptoms of her disability.  Short alleges that employees complained about her service dogs and that she was subject to scrutiny and harassment by her co-workers. D.I. 1 ¶¶11,12.  Specifically, she alleges that in May of 2019, that

Boulden falsely accused her of changing her work hours and threatened her with a 10-day suspension. D.I. 1 ¶16.   In addition, she claims that due to Boulden's threatening tone, she left work early the same day due to extreme stress. D.I. 1 ¶18.

However, during Short's deposition, she only identified one instance wherein an unknown employee complained about her service animal to which the matter was resolved without consequence.   DA007-08 at 23-25 ¶¶5-1. Other than this one instance, no other complaints were brought by Short concerning her service animal. DA007-08 at 24-25 ¶¶23-1. Thus, disproving Short's allegations that several employees complained and she was subject to scrutiny and harassment by her co-workers.

Short's allegations of scrutiny and harassment are primarily directed at Boulden, who discussed all of Short's inappropriate actions and discipline.  D.I. 1 ¶¶11,15-26; DA108-14 Short argues that Boulden had a threatening tone and or body language and lacked sympathy whenever she had to address any of Short's violations. D.I. 1 at ¶¶16-18, 23; DA017-18 at 63-65 ¶¶23-6.  Ironically, Short was being disciplined in these moments for serious lapses of judgment.   Short's complaint is really with Boulden's management style and nothing more.  Boulden's firm deliverance of a disciplinary session with Short would have been no different if the same actions were done by another employee with or without a disability. DA110.

Short also alleges that Boulden failed to allow her to relieve her service dog on one occasion. DA007 at 21-22 ¶¶18-21. Ultimately, Short took her service animal out to relieve itself. DA007 at 22 ¶¶10-14. The record is devoid of any indication that Boulden requested Short's compliance in an office task prior to tending to Short's service animal for discriminatory reasons. There is no evidence that DHSS discriminated against Short because she was disabled or needed an accommodation. Thus, Short has failed to present a *prima facie* case of disability discrimination.

Moreover, the record demonstrates that DHSS' actions were based on legitimate non-discriminatory reasons unrelated to Short's disability. *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017). Boulden confronted Short when Short inappropriately changed her work schedule in the eStar system, explained Short's violation of DHSS policy and advised of the proposed disciplinary action that would result. DA110. Boulden also confronted Short after she inappropriately circulated an email to all building employees causing a commotion and disrupting the workday. DA112. DHSS ultimately terminated Short's employment due to Short's multiple failures to follow DHSS' policy and procedures, when she changed her work schedule and sent out unauthorized emails to the office building – wholly unrelated to Short's disability. DA096-97. These legitimate, non-discriminatory reasons dispel any notion that Short was discriminated against due to her disability. Therefore, her claims must be dismissed.

## IV.    Short Has Not Established that DHSS Retaliated Against Short in Violation of the ADA

Short also fails to establish a retaliation claim.  "To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)); *Shah v. Bank of Am.*, 346 F. App'x 831, 834 n.2 (3d Cir.). "The burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies to ADA retaliation claims." *Williams v. Phil. Housing Authority Police Dep't*, 380 F.3d 751, 759 n.3 (3d Cir. 2004). Short's retaliation claim fails because she has not alleged facts demonstrating that she engaged in protected activity.  Additionally, while DHSS admits that Short suffered adverse employment actions, those adverse employment actions were taken due to legitimate, non-discriminatory reasons and Short cannot prove otherwise.

Short alleges that she was continually retaliated against for having complained of discrimination, then filing a Charge of Discrimination with the Delaware Department of Labor ("DOL") and Equal Employment Opportunity Commission ("EEOC"), and filing this lawsuit in violation of 19 *Del. C.* §710 (6)[5]. D.I. 1 ¶34.

---

[5] Plaintiff has referenced the Delaware Code. To the extent Plaintiff is alleging a violation of state law, supplemental jurisdiction should be denied.

Throughout discovery, Short has failed to identify any protected activity she engaged in before she was terminated.  The only interactions between Short and human resources or her supervisors are devoid of any discrimination complaints. DA058. Additionally, to the extent she argues filing of a worker's compensation claim satisfies protected activity under the ADA, courts have made clear that filing a worker's compensation claim is not protected activity under the ADA. *See Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 241 (3d Cir.) (filing a claim for workers' compensation does not constitute protected activity under either Title VII or the ADA and, thus, Plaintiff cannot meet the elements of a retaliation claim).

Additionally, as DHSS argues *supra*, DHSS terminated Short for legitimate, non-discriminatory reasons – she continuously failed to follow DHSS' policies and procedures, inappropriately changing her work schedule without the necessary management approval, and by sending two all building-employee emails causing mass confusion and panic. These reasons are wholly unrelated to any alleged protected activity.  And there is no evidence in the record to prove to Short's claims to the contrary.  Thus, the Court should grant DHSS' motion for summary judgment and dismiss Short's ADA retaliation claim.

## V.   Short's FMLA Retaliation and Discrimination Claims Fail[6]

Short alleges that, after she requested and received FMLA leave, DHSS

retaliated and discriminated against her.  Not so.  Because "FMLA retaliation claims

require proof of the employer's retaliatory intent, courts have assessed these claims

through the lens of employment discrimination law." *Capps v. Mondelez Global,*

*LCC,* 847 F.3d 144, 151 (3d Cir. 2017) (Capps II); *Lichtenstein v. University of*

*Pittsburgh Medical Center*, 691 F.3d 294, 301-02 (3d Cir. 2012). FMLA retaliation

claims, then, are assessed under the burden-shifting framework established in

*McDonnell Douglas*. *Davis v. Temple Univ. Hosp., Inc.,* 2015 WL 7180505, *5 (E.D.

Pa. Nov. 16, 2015).  Under the *McDonnell Douglas* framework, a plaintiff must first

establish a *prima facie* case of discrimination. A plaintiff must show that "(1) he

invoked his right to FMLA leave; (2) he suffered an adverse employment decision;

and (3) the adverse employment decision was causally related to the leave."

*Lichtenstein*, 691 F.3d at 302.

For purposes of this motion only, DHSS concedes that Short invoked her right

to FMLA leave and that she suffered an adverse employment action. Short, however,

cannot succeed on her FMLA retaliation claim because her termination is not

---

[6] FMLA discrimination and retaliation claims have been combined to address all
allegations by Plaintiff related to her use of FMLA.  Short appears to believe there
is a distinction between an FMLA discrimination and retaliation claim but DHSS
could not find any case law supporting such distinction.  Additionally, Counts III
and IV are nearly identical.

causally related to her request for leave. The Third Circuit has identified three factors to aid courts in making that determination: (1) close temporal activity between the events; (2) a record that the employer subjected the employee to ongoing antagonism; and (3) an employer's inconsistent reasons for termination. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).  Short cannot make this showing.

First, Short requested FMLA leave on August 7, 2019 with a request to start FMLA on September 3, 2019 to run continuous until November 3, 2019. DA090. Short's FMLA leave was approved within nine days of her request. DA093. Short started FMLA leave on September 3, 2019, DA090, and was terminated on September 4, 2019. Although Short's termination was close in time with her first day of FMLA leave, it was a month after Short first requested and was approved for FMLA leave. See *Capps v. Mondelez Global, LCC,* 147 F. Supp.3d 327, 337 (E.D. Pa. 2015) (Capps I) (noting Third Circuit decisions where three-week gaps and two-month gaps were not unusually suggestive).  Second, there is simply no record reflecting ongoing antagonism against Short.  Finally, Short cannot point to any inconsistencies in DHSS' stated bases for her termination. She was advised of the grounds for her termination on September 4, 2019. DA096-97. There is no record evidence to suggest inconsistencies in why she was terminated. Accordingly, Short cannot make a *prima facie* showing of her FMLA retaliation claim.

Even assuming Short could establish a *prima face* showing of her retaliation claim, her claim still fails because DHSS had a legitimate, non-discriminatory basis for termination. *See Capps* I, 147 F. Supp.3d at 337. DHSS' burden in this regard is "relatively light" and its explanation need only "permit the conclusion that there was nondiscriminatory reason for the unfavorable employment decision." *Id.* DHSS satisfies its burden. As outlined above, DHSS terminated Short's employment for Short's failure to adhere to DHSS' policies and procedures, changes to Short's work schedule, and unapproved all building-employee emails which caused mass confusion and panic. Short had all three business related violations right before she applied for FMLA. DA089; DA086-88. Her termination letter references these violations, inclusive of her eStar event, all that occurred within her 5 months of becoming a new merit employee. DA096-97. For these reasons, she was terminated, not due to her request or approval of FMLA. The undisputed record supports DHSS' bases for termination and Short cannot demonstrate otherwise. DHSS' motion for summary judgment should be granted.

VI.     **Short's Worker's Compensation Retaliation Claim Should be Dismissed for Lack of Jurisdiction and Short Fails to Prove Retaliation.**

Lastly, Short alleges that she suffered an adverse employment decision when she was scrutinized and terminated for taking and/or requesting Workers Compensation. D.I. 1 ¶¶48-49.  She also contends that the adverse employment

decision was causally related to her Workers Compensation. D.I. 1 at ¶50.  To the extent that Short seeks to raise a state law claim under the Workers' Compensation Act, this Court should deny supplemental jurisdiction. *See Carlsbad Technology, Inc. v. HIF Bio, Inc.,* 129 S.Ct 1862, 1864 (2009).

To establish a prima facie case for retaliation under the Workers' Compensation Act, 19 Del. C. § 2365, a plaintiff must show that: (1) she exercised her rights under the Workers' Compensation Act; (2) defendant took an adverse employment action against her; (3) there was a causal connection between her exercise of rights and the adverse employment action. *Gilliss v. Dentsply, LLC*, 116 F.Supp.3d 433 (D. Del. 2015).  *See Santora v. Red Clay Consol. School Dist.*, 901 F. Supp. 2d 482, 491 (D. Del. 2012), *aff'd*, 580 F. App'x 59 (3d Cir. 2014) (noting that an employee's request for workers' compensation benefits "is precisely the activity protected by § 2365").

Here, Short's claim fails for lack of evidentiary support and causal connection between Short's requesting and/or receipt of Worker's Compensation benefits and her termination.  Short suffered a work-related injury to her back and left shoulder in October of 2018, to which she received all her Worker's Compensation benefits. DA005-06 at 14-17 ¶¶21-24; DA0061-66.  In fact, Plaintiff fully commuted and/or resolved her Worker's Compensation claim. D006 at 17 ¶¶10-24.  Plaintiff admitted to receipt of medical treatment and time off for her work-related claim. DA005-006

21

at 16-17 ¶¶13-3.  She has not produced any evidence that shows that DHSS terminated her because she filed for and/or received Workers' Compensation benefits.  She has failed to provide the necessary causal connection and her claim must be dismissed.

## VII.   Conclusion

Short asserts that she suffered discrimination due to her disability, taking and or receiving WC benefits and FMLA and thereby terminated because her disability and the reporting of her alleged discrimination. The well-developed record demonstrates otherwise; Short was not terminated because of her disability or any motivation based on her disability. The facts reveal that DHSS terminated Short based upon legitimate, non-discriminatory reasons. Accordingly, summary judgment should be entered in favor of DHSS.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

*/s/ Luciana M. Parker*
Luciana M. Parker, ID No. 5177
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 N. French St., 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
*Attorney for Defendant*

Date: March 10, 2023

22