## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ELIZABETH SHORT          :
        Plaintiff,       :     CASE NO.  1:21-cv-1121-CFC
                         :
     v.                :     TRIAL BY JURY DEMANDED
                         :
STATE OF DELAWARE DIVISION :
OF HEALTH AND SOCIAL    :
SERVICES                :
        Defendants.     :

## PLAINTIFF ELIZABETH SHORT'S ANSWERING BRIEF IN
## SUPPORT OF DENYING DEFENDANT STATE OF DELAWARE
## DIVISION OF HEALTH AND SOCIAL SERVICES'
## MOTION FOR SUMMARY JUDGMENT

**THE POLIQUIN FIRM, LLC**

<u>/s/ Ronald G. Poliquin, Esquire</u>
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors Avenue
Dover, DE 19904
(302) 702-5501
Attorney for *Plaintiff Elizabeth Short*

Date:  March 31, 2023

# **TABLE OF CONTENTS**

PAGE

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . .………………………….. 3

NATURE AND STAGE OF THE PROCEEDINGS……………………….....… 5

SUMMARY OF ARGUMENT ………………………………………....… 6

ARGUMENT . . . . . . . . . . . . . . . . . . . .……………………….…........... 7

    I.    Standard of Review ……………………………………….… 7

    II.    Short's Claims for Disability Discrimination and
        Retaliation is Brought Pursuant to both the Americans
        with Disabilities Act and the State of Delaware
        Discrimination in Employment Act ……………...……....………. 7

    III.    DHSS Retaliated Against Short for Complaints
         regarding Reasonable Accommodation ……………………..…… 9

    IV.    DHSS' Purported Reasons for Terminating Plaintiff
         are Pretextual …………………………………………………… 13

    V.    DHSS Discriminated Against Plaintiff Based
        on Short's Disability …………………………………………… 15

    VI.    Short's Worker's Compensation Retaliation Claim …………….... 17

    VII.    The Court should Exercise Supplemental Jurisdiction
         over Short's State Claims ……………………………………18

CONCLUSION ………………………………………………..… 20

Exhibits

# **TABLE OF CITATIONS**

**Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ……………………………….… 7,12

*Barr v. Diguglielmo*, 348 F. App'x 769 (3d Cir. 2009) …………………….… 11

*Barber v. CSX Distrib. Servs*., 68 F.3d 694, 701–02 (3d Cir. 1995) ……………. 11

*Bui v. Psychiatry Residency Training* (3rd Cir. 2021) …………………………… 13

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) …………… 10

*De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 308 (3d Cir. 2003) …………..... 19

*Clark County School Dist. v.Breeden* ,532 U.S. 268, S.Ct.(2001) ……………..…11

*Curay-Cramer v. Ursuline Acad. of Wilmington*, Del., Inc.,
450 F.3d 130, 135 (3d Cir. 2006) …………………………………………...… 11

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) …………………………… 14

*Gilliss v. Dentsply, LLC*, 116 F.Supp.3d 433 (D. Del. 2015) …………………..... 18

*Leboon v. Lancaster Jewish Cmty.*, 503 F.3d 217, 232 (3d Cir. 2007) …………. 10

*Marten v. Godwin*, 499 F.3d 290 (3rd Cir. 2007) ………………………….…… 7

*Martinez v. Del. State Police*, No. 16-cv-564 (RGA) (D. Del. Nov. 23, 2016) ….. 8

*Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir.2000) …………..... 7

*Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017) …………...… 10

*Paitsel v. State*, K15C-02-030 JJC (Del. Super. Ct. Apr. 7, 2016) ……………… 9

*Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982) ………... 7

*Reedy v. Evanson* 615 F.3d 197 (3rd Cir. 2010) …………………………….…...…7

*Santora v. Red Clay Consol. School Dist.*, 901 F. Supp. 2d 482, 491 (D. Del. 2012) …………………………………………… 18

*Thompson v. N. Am. Stainless*, 562 U.S. 170, 175 (2011) …………………… 10

*Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521, at *4 (D. Del. July 28, 2020) ………………………………….. 15

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ………………………………….… 19

*Williams v. Philadelphia Housing Authority*, 230 F. Supp. 2d 631 (E.D. Pa. 2002) ……………………………………………….... 10

## Statutes

Del Code tit. 19, § 710(7) ……………………………………………….... 8

Del Code tit. 19, § 714(c) …………………………………………………… 8

Del Code tit 19, §724 …………………………………………………..… 9

Del Code tit 19. § 2365 …………………………………………………… 17,18

28 U.S.C. § 1367(a) …………………………………………………...… 19

42 U.S.C. § 12203(a) ………………………………………………….... 9

42  U.S.C. § 2000e-3 …………………………………………………… 10

## <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiff Short incorporates Defendant's Nature and Stage of the Proceedings. This is Plaintiff Elizabeth Short's Answering Brief in Opposition to Defendant State of Delaware's Department of Health and Social Services ("DHSS") Motion for Summary Judgment. Short incorporates its Concise Statements of Facts with an Appendix filed contemporaneously with this Answering Brief.

## SUMMARY OF THE ARGUMENT

1.      DHSS is not protected by sovereign immunity under the Eleventh Amendment for Plaintiff's disability and retaliation claims since Plaintiff's claims are also brought pursuant to The Delaware Discrimination in Employment Act and Title I of the Person with Disabilities Employment Protection Act (PDEPA).

2.      Plaintiff presents a prima facie case of ADA/PDEPA retaliation since DHSS' terminated Plaintiff at the same time period it was addressing Plaintiff's complaints concerning reasonable accommodations.

3.      Plaintiff presents a prima facie case of ADA/PDEPA discrimination as she was discriminated against because of her disability which culminated in her termination.

5.      Plaintiff presents a prima face case of retaliation for Workers' Compensation since at the time of her termination, Plaintiff was preparing for surgery for her injury suffered which related to her workers' compensation claim.

6.      Plaintiff voluntarily dismisses its FMLA claims based on the case law presented in Defendant's brief.

## ARGUMENT

### I.      Standard of Review

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. *Reedy v. Evanson* 615 F.3d 197 (3rd Cir. 2010) citing FED. R. CIV. P. 56(c)(2). This Court must view all of the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir.2000). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982). Short's evidence "is to be believed, and all justifiable inferences are to be drawn in her favor." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Marten v. Godwin*, 499 F.3d 290 (3rd Cir. 2007).

### II.     Short's Claims for Disability Discrimination and Retaliation is Brought Pursuant to both the Americans with Disabilities Act and the State of Delaware Acts of Discrimination.

As stated in Defendant's brief and Plaintiff's Complaint, Plaintiff's claims are brought pursuant to both Federal and State law.[1] Therefore, even if Plaintiff's

---

[1] "Plaintiff has referenced the Delaware Code. To the extent Plaintiff is alleging a violation of state law, supplemental jurisdiction should be denied." D.I. 27, Defendant's Opening Brief In Support Of Its Motion for Summary Judgment, Footnote 5.

claims against the State of Delaware are barred by sovereign immunity regarding its federal claims, they are proper pursuant to her analog state claims.

The Delaware Discrimination in Employment Act and Title I of the Person with Disabilities Employment Protection Act (PDEPA) explicitly allow for recovery against state entities for employment discrimination. See Del. Code tit. 19, § 710(7) (defining employer to include state entities). Critically, the law also provides plaintiffs a choice of a federal forum. Del Code tit. 19, § 714(c) ("The charging party shall elect a Delaware or federal forum...."). Thus, the State has unequivocally consented to the suit. See *Martinez v. Del. State Police*, No. 16-cv-564 (RGA) (D. Del. Nov. 23, 2016)

Here, Plaintiff alleges she suffered unlawful disability discrimination and unlawful retaliation by the State of Delaware Division of Health and Social Services in violation of both federal and state law.

Delaware law explicitly states that an "Employer" encompasses "any person employing 4 or more employees within the State at the time of the alleged violation, *including the State or any political subdivision or board*…" 19 *Del. Code* §710(7). Title I of the Persons with Disabilities Employment Protection Act (PDEPA) prohibits "…state and local governments…against qualified individuals with disabilities in job application procedures, hiring, firing, advancement, compensation, job training, and other terms, conditions, and privileges of

employment." 19 *Del. Code* §724.

Delaware's employment discrimination statute is nearly identical to the federal Title VII employment discrimination statute. Because the statutory language is substantially similar to its Federal counterpart regarding unlawful employment practices, the Delaware Supreme Court has held that the tests and standards used for Title VII apply to Delaware statutory claims as well. In other words, Delaware takes its interpretive lead regarding State discrimination statutes from the Federal interpretations due to the similarity of the statutes. For this reason, this Court will look to federal interpretations to substitute for a lack of state authority on this matter. *Paitsel v. State*, K15C-02-030 JJC (Del. Super. Ct. Apr. 7, 2016)

### III.   DHSS Retaliated Against Short for Complaints regarding Reasonable Accommodation.

The ADA's retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). The Title VII framework for the analysis of retaliation claims is also applicable to ADA claims. *Williams v. Philadelphia Housing Authority*, 230 F. Supp. 2d 631 (E.D. Pa. 2002)

Similar to Title VII's prohibition on retaliation, the ADA prohibition should be interpreted liberally to confer exceptionally broad protection upon employees

9

covered by Title VII. *Thompson v. N. Am. Stainless*, 562 U.S. 170, 175

(2011). An adverse employment action is defined more broadly in a

retaliation case than in a typical discrimination case and covers all employer

actions that would have dissuaded a reasonable employee from making or

supporting a discrimination charge. It is not limited to discrimination in

compensation, terms, conditions, or privileges of employment. *Burlington N.*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Moody v. Atl. City Bd.*

*of Educ.*, 870 F.3d 206, 220 (3d Cir. 2017).

Courts take an expansive view of what constitutes oppositional

conduct, and both formal and informal complaints of discriminatory

employment practices are protected. *Leboon v. Lancaster Jewish Cmty.*, 503

F.3d 217, 232 (3d Cir. 2007).  Title VII prohibits retaliation against an

employee because she "opposed" any practice made unlawful under Title

VII (the opposition clause) or "participated in any manner in an

investigation, proceeding, or hearing under" Title VII (the participation

clause).  42  U.S.C. § 2000e-3.

To be covered, opposition "must identify the employer and the

practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline*

*Acad. of Wilmington*, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (citing

*Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995)). "When

deciding whether a plaintiff has engaged in opposition conduct, we look to the message being conveyed" Id. But, "there is no hard and fast rule as to whether the conduct in a given case is protected." *Id*.

It is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA. *Barr v. Diguglielmo*, 348 F. App'x 769 (3d Cir. 2009)

Where the temporal proximity between the protected activity and the adverse action is "unusually suggestive," it is sufficient standing alone to create an inference of causality and defeat summary judgment. *See Clark County School Dist. v. Breeden* ,532 U.S. 268, S.Ct.(2001) (temporal proximity alone, when "very close," can in some instances establish a prima facie case. Where the temporal proximity is not "unusually suggestive," we ask whether "the proffered evidence, looked at as a whole, may suffice to raise the inference." *Farrell*, 206 F.3d at 280 (internal citation and quotation marks omitted). Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus. *Id.* at 279–81. *See also Anderson v. Liberty Lobby, Inc.* , 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

Here, there is no doubt that Plaintiff engaged in covered protected activities just prior to her termination. As of July 12, 2019, Short was meeting expectations as an employee and did not need any improvement. At the same time, Boulden was deciding Plaintiff's termination (August 29, 2019), Plaintiff was complaining to Boulden that her reasonable accommodations were not being followed. Thus Boulden was contemporaneously addressing Plaintiff's complaints regarding reasonable accommodations at the very same time she decided to terminate Plaintiff. If DHSS was not complying with its agreed upon reasonable accommodations, that would be a violation of the ADA.

Boulden had a history of animus against Short because of her disabilities. On June 5, 2019, Boulden met with Plaintiff and in a threatening tone informed her that she reviewed her file, knew all about her disabilities, and left Plaintiff with the impression that she was "watching her". In addition, Plaintiff's termination coincided with her being on medical leave due to her disability and workers compensation claim. There can be no dispute that the decision to terminate Plaintiff was at the identical time she's complaining about accommodations. The timing constitutes a temporary proximity that is "unusually suggestive." Further, the decision maker is an individual who had demonstrated outward hostility to Plaintiff for her

12

disability prior to the termination. Six days after Plaintiff's complaint regarding the reasonable accommodations, Boulden recommended Short's termination.

In addition, on July 19, 2019, Plaintiff complained to DHSS' ADA coordinator that administrator Stephanie Fitzgerald was violating ADA guidelines regarding service animals. The disagreement between Fitzgerald and Short created a lot of tension in the office. On July 23, 2019, the ADA coordinator confirmed Plaintiff's complaint and instructed Fitzgerald to follow the proper protocol. The "suggestive timing" adds an additional basis to believe that Short's termination was payback for her protected activities regarding ADA complaints.

## IV.    DHSS' Purported Reasons for Terminating Plaintiff are Pretextual.

To defeat a motion for summary judgment at this third step, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Bui v. Psychiatry Residency Training* (3rd Cir. 2021 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, there is a plethora of evidence to disbelieve Defendant's basis for Plaintiff's suspension and then subsequent termination. First, DHSS disciplined the plaintiff for allegedly changing her own schedule in violation of policy OM-7-

2016. There is a legitimate dispute of fact as whether Plaintiff even has the ability to access her own schedule in her work position.  Secondly, Short presented evidence that Mike Kosten changed her schedule per her request. Lastly, DHSS disciplined Short pursuant to OM-7-2016, a policy that has nothing to do with an employee changing their own schedule. The policy covers client confidentiality. The accusations against Short were not listed as a violation in OM-7-2016.

DHSS claims that it terminated Short because she was on a "probationary period". Although Short was on a probationary period, she had been a satisfactory employee of the DHSS since 2016. Short's termination wasn't a situation where DHSS didn't know the employee's history and work habits.

Just prior to her termination, Short was meeting expectations and did not need improvement. Short's direct supervisor, Denise Greenfield had no problems with her performance. Why wouldn't Greenfield be involved in the decision to terminate Short? A plausible answer is that Boulden did not want to hear what Greenfield had to say about Short's work performance because she was being terminated in retaliation for her complaints about her reasonable accommodations and ADA compliance. Short's disability was undoubtedly an issue for Boulden.

Kim Boulden made the decision to terminate Short. The same Kim Boulden who had a closed-door meeting where she informed Plaintiff in a threatening tone that she knew all about her disabilities and was watching her. The same Kim

14

Boulden who denied Short the ability to take her dog out to relieve himself. Lastly, the decision to terminate Short occurred at the same time Boulden was addressing Short's complaints regarding reasonable accommodations. Based on these facts, a reasonable fact finder could disbelieve DHSS' purported reasoning for her termination.

### V.  DHSS Discriminated Against Plaintiff Based on Short's Disability.

To state a claim for disability discrimination, Short must establish that she: (1) has a disability under the Delaware Persons with Disabilities Employment Protections Act ("DPDEPA") or the ADA; (2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she suffered an adverse employment action as a result of discrimination, including her employer's refusal to make a reasonable accommodation for her disability. *Tolliver v. Delmarva Foundation for Medical Care*, 2020 WL 4335521, at *4 (D. Del. July 28, 2020).

DHSS concedes Short has a disability. Secondly, there is no doubt that Short was otherwise qualified for the essential functions of the job, with or without reasonable accommodations by the employer. In fact, just prior to her termination, Short had a performance review where she "met expectations" and there was no need for any specific improvements.

Short demonstrates she suffered discrimination as a result of her disability.

15

While at DHSS, Short was shuffled around the office. Short and her service animal were moved to a cold undesirable part of the office. After she complained, DHSS relocated Short to four different locations in different areas of the building. Short was informed that she was always being moved because they needed the offices for the "actual workers".

On June 5, 2019, Kimberly Boulden came into Short's office and shut the door for a disciplinary meeting. Boulden told Short in a threatening tone that "she knew all about her medical conditions." This meeting took place during the same time Boulden suspended Short for allegedly changing her schedule. Based on the fact that Boulden disciplined Short at the same time mentioning all of her medical conditions after reviewing her file begs the question- was Short suspended for allegedly changing her schedule or because of her disabilities which were mentioned prominently in a threatening tone at the same time.

Boulden told Short she knew why she had her dog Cash. Boulden got Short so upset that Boulden was afraid Short would have a seizure. Boulden informed Short that she knew Short had "anxiety, PTSD, depression", and that she looked at her file and read her emergency contact card. This occurred during a meeting when Boulden was supposedly there to discipline Short regarding changing her own schedule. Boulden's voice and body language implied she was watching her.  The

only reason Boulden would broach Short's disabilities was to mask her discrimination as discipline for the alleged eStar allegation.

In addition, at the same time of the "lockdown", Boulden prohibited Short from taking her dog out to relieve himself. Instead, Boulden ordered Short to pack up her computer and put it in her office. Boulden's actions show continue animus against Short for her disability.

Around August 29, 2019, Short complained to DHSS' ADA Coordinator that Boulden was not honoring her reasonable accommodations for her disability. During that same period, Boulden decided to terminate Short. Perplexedly, Short's supervisor was not part of the decision to terminate Short. In addition, at the same time as Short's termination, she was in the process of going on medical leave for her disabilities.

## VI.    Short's Worker's Compensation Retaliation Claim

To establish a prima facie case for retaliation under the Workers' Compensation Act, 19 Del. C. § 2365, a plaintiff must show that: (1) she exercised her rights under the Workers' Compensation Act; (2) defendant took an adverse employment action against her; (3) there was a causal connection between her exercise of rights and the adverse employment action. *Gilliss v. Dentsply, LLC*, 116 F.Supp.3d 433 (D. Del. 2015).  *See Santora v. Red Clay Consol. School Dist.*, 901 F. Supp. 2d 482, 491 (D. Del. 2012), *aff'd*, 580 F. App'x 59 (3d Cir. 2014)

(noting that an employee's request for workers' compensation benefits "is precisely the activity protected by § 2365").

Here, there is no doubt Plaintiff filed a claim related to her rights under the Workers' Compensation Act. Secondly, Plaintiff was terminated during the same time she was having surgery related to her workers' compensation claim. Therefore, the temporal proximity between the surgery and the termination is "unusually suggestive". Short was preparing to take FMLA leave from September 3, 2019, through November 3, 2019, due to her disability and workers' compensation claim.

At the time of her termination, Plaintiff's workers' compensation claim was still pending. Around June 5, 2019, Kimberly Boulden was requesting information regarding Plaintiff's workers' compensation claim. Boulden's surgery related to her workers' compensation claim was scheduled on September 3rd, one day prior to her termination. Boulden was aware of Plaintiff's surgery. The decision to terminate Short was during the same period that Plaintiff was out on surgery related to her workers' compensation injury. Therefore, Plaintiff presents sufficient evidence that Boulden's recommendation for termination was related to her surgery which was part and parcel of her rights regarding workers' compensation.

**VII.   The Court should Exercise Supplemental Jurisdiction over all State Claims.**

18

"[A] district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's 'original jurisdiction.'" *De Asencio v. Tyson Foods, Inc*., 342 F.3d 301, 308 (3d Cir. 2003) ( quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); see 28 U.S.C. § 1367(a).

Here, Plaintiff's claims share a common nucleus of fact. Plaintiff was discriminated against because of her disability which ultimately culminated in her termination. In addition, DHSS retaliated against Plaintiff for taking leave for surgery related to her workers' compensation claim and her claims regarding discrimination based on her disability.

## <u>CONCLUSION</u>

The Defendant continually discriminated and retaliated against Elizabeth Short which ultimately resulted in her termination. Any proffered legitimate reasons for Plaintiff's termination should be disbelieved because the individual who decided Short's fate openly communicated animus against Short because of her disability. There are a number of factual disputes that must be resolved before a jury. Therefore, Defendant's Motion for Summary Judgment should be denied.

**THE POLIQUIN FIRM LLC**

<u>/s/ Ronald G. Poliquin, Esquire</u>
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors Avenue
Dover, DE 19904
Attorney for Plaintiff Jennifer Vaughn

Date:  March 31, 2023